## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.**

**ROBERT S. (BOB) WILLETT,**

**Plaintiff,**

**V.**

**Former 12th Judicial District Attorney Alonzo C. Payne, in his individual and official capacity;**
**Office of the District Attorney, 12th Judicial District in its official capacity;**
**Former Assistant District Attorney R. Alex Raines, in his individual and official capacity ;**
**12th Judicial District Attorney's Office Investigator Sam Coffman, in his individual and official capacity;**
**12th Judicial District Attorney's business and finance administrator, Tammy Rogers, in her official capacity;**
**John/Jane Does 1-10, and other unknown employees of the 12th Judicial District Attorney, and other unknown agents of Alamosa County and the 12th Judicial District**

**Defendants,**

---

### CIVIL RIGHTS COMPLAINT WITH DEMAND FOR TRIAL BY JURY

---

Plaintiff, Robert S. Willett, by and through his attorneys, Maher & Maher Law, PC, brings claims against the above-listed Defendants in their individual and official capacities and requests trial by jury.

## I. PRELIMINARY STATEMENT

1. This is a civil rights action in which Robert S. Willett seeks relief based on wrongful acts committed against him by the above-named Defendants, specifically, conspiracy to violate his state and federal constitutional rights, misconduct, wrongful and malicious acts, constitutional violations, and violations of rights secured by the laws and constitution of the United States and of the State of Colorado (collectively referred to as "the misconduct").

2. As set forth below, the misconduct was committed by Defendants Alamosa County, 12th Judicial District Attorney Alonzo C. Payne, Assistant District Attorney R. Alex Raines, 12th JD DA Investigator Sam Coffman, and others.

3. Each Defendant acted under color of state law and within the scope of their employment when engaging in the misconduct described herein. They are being sued in their official and individual capacities.

4. Plaintiff Robert S. Willett asserts that his Constitutional rights were violated because of the actions and omissions of the Defendants as well as the policies, procedures, lack of procedures, the customs and/or practices of 12th Judicial District Attorney and Alamosa County and the inadequate supervision and training by the Office of the District Attorney and Alamosa County, Colorado.

## II. <u>JURISDICTION AND VENUES</u>

5. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988 to redress the Defendants' deprivation of Mr. Willett 's rights secured by the U.S. Constitution.

6. This Court has jurisdiction over Mr. Willett's federal claims pursuant to 28 U.S.C. §§ 1331, 1343. Supplemental jurisdiction over Robert Willett's state law claims exists pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper under 28 U.S.C. § 1391(b). Most of the Defendants reside in this judicial district, and the events and omissions giving rise to Mr. Willett's claims occurred within the State of Colorado.

## III. <u>PARTIES</u>

8. At all times relevant to this Complaint, Plaintiff Robert S. Willett was a citizen and resident of the State of Colorado.

9. Defendant, the District Attorney of the 12th Judicial District is a state constitutionally mandated elected officer with responsibility for the prosecution of all state criminal law violations in the district, which comprises six counties in the San Luis Valley of southern Colorado.

10. Defendant prosecutors, investigators, and staff of the 12th Judicial District acting in their investigatory and administrative capacities.

11. At all times relevant to the allegations in this Complaint, Defendants Alonzo C. Payne, and R. Alex Raines were acting under the color of state law in their capacities as District Attorney and Assistant District Attorney. Each defendant's acts or omissions were conducted within the scope of their official duties or employment.

12. At all times relevant to this Complaint, Defendant Alonzo C. Payne was acting within the scope of his official duties but outside of the advocacy function, and under color of state law in his capacity as the elected District Attorney for the 12th Judicial District.  At all relevant times, Defendant Payne was a citizen of the United States and resident of the State of Colorado.

13. At all times relevant to this Complaint, Defendant R. Alex Raines was acting within the scope of his official duties, but outside of the advocacy function, and under color of state law in his capacity as Assistant District Attorney for the 12th Judicial District. At all relevant times, Defendant Raines was a citizen of the United States and resident of the State of Colorado.

14. At all times relevant to this Complaint, Defendant Sam Coffman was acting within the scope of his official duties and employment and under color of state law in his capacity as a Colorado Peace Officer and criminal investigator for the 12th Judicial District. At all relevant times, Defendant Coffman was a citizen of the United States and resident of the State of Colorado.

15. All acts by Defendant's Payne, Raines, and Coffman and others alleged herein were performed in an investigative and/or administrative phase of the case and not in their prosecutorial roles as an advocate for the state.


## IV. <u>FACTUAL ALLEGATIONS</u>

### CIRCUMSTANCES OF CRIMINAL CHARGING OF PLAINTIFF

16. On or about March 2, 2022, Alamosa City Council had a first reading of a proposed ordinance to allow expenditure of city resources on non-municipal recall elections.

17. If passed, the ordinance would fund a district-wide effort to recall Alonzo Payne from office. This action by the City government was unprecedented in Colorado and taken due to the serious circumstances and public danger created by the manner in which Defendant Payne and his staff conducted the affairs of his elected office.

18. Robert S. Willett was Alonzo Payne's only opponent in the 2020 District Attorney election process and would be listed as a possible replacement candidate on a recall ballot. Mr. Willett was the former appointed District Attorney and former political opponent of Alonzo Payne for the office during the 2020 election cycle.

19. In a diligent and alarming communications (See Attachment), the Alamosa City Council considered issues ranging from breathtaking indifference to the enforcement of law and outright disregard for Colorado's Victims' Rights Act.

20. In an act of retaliation against Robert Willett, Alonzo Payne, with the help of his Assistant District Attorney Alex Raines and his Chief Investigator Sam Coffman, caused to be filed a Felony Complaint and Information falsely alleging that Robert Willett engaged in embezzlement during his time as the appointed District Attorney for the 12th Judicial District. (see Alamosa County criminal case 22CR51).

21. Alonzo Payne filed the Complaint on March 3, 2022, one day after the City of Alamosa publicly started the process of funding a recall, and mere weeks after Mr. Willett wrote a public letter to the editor of the Valley Courier newspaper calling for the resignation of Alonzo Payne. This letter appeared in the February 17th, 2022, edition. The Valley Courier is the regional paper of record for the San Luis Valley. (see attached letter).

22. The false charge concocted by Mr. Payne carried the consequence of imperiling Robert Willett's license to practice law and his freedom and liberty as guaranteed by both the United States and Colorado constitutions.

23. The false charge weaponized by Mr. Payne imperiled Mr. Willett's ability to provide for his family. The charge resulted in Mr. Willett being suspended without pay from his employment as a prosecutor in the 4th Judicial District, public and professional embarrassment, and having to hire a criminal defense law firm to defend him from the meritless and malicious prosecution.

24. The nature of the Class 5 Felony charge against Robert Willett rendered Mr. Willett, if convicted, forever "ineligible and disqualified from being a member of the general assembly of this state or from holding any office of trust or profit in this state." § 18-8-407 Colo. Rev. Stat. It further carried a maximum penalty of 3 years in prison.

25. Alonzo Payne falsely charged Mr. Willett with a felony despite Mr. Willett being factually innocent, while being a potential political rival, and for exercising his 1st Amendment rights to criticize a public figure and political office holder in the jurisdiction and, as an act of sheer retaliation and abuse of the power of his office under color of state law.

26. The reckless and unwarranted investigation (if it can be called such) charging Mr. Willett was a clear effort by Alonzo Payne, Alex Raines, and Sam Coffman conspiring to destroy and intimidate  a political opponent and any other voices then critical of Payne's tenure and manner of running the Office;  and to preclude community access to a highly competent, well respected, and earnest prosecutor known to carry out his responsibilities as an elected official, with competence, integrity,   transparency, and diligence.

27. Alonzo Payne had a reputation among his prosecutors and others in the community for vindictiveness and opening investigations into people that had done things to upset him and

also using his privileged position in society as a licensed Colorado attorney in a way to intimidate his critics and rivals.

28. Alonzo Payne had a reputation among his prosecutors, law enforcement, area stakeholders in political and public office, and the community of not properly and justly executing the vital functions of his elected office by refusing to prosecute serious and violent crimes, or run a competent, ethical, and just administration with honor and integrity. Payne fostered a loose and reckless approach to his pivotal role as the chief law enforcement authority of the six-county 12th Judicial District of Colorado.

29. Alonzo Payne had a reputation among his prosecutors, area law enforcement and stakeholders to include those in public office of being dishonest with victims, the courts, and witnesses and with political office holders and law enforcement.

## INVESTIGATION AND PROSECUTION OF ROBERT WILLETT

30. On or about January 19, 2022, Alonzo Payne directed Sam Coffman to investigate Robert Willett regarding a Christmas bonus which Mr. Willett gave to employees and himself, during the final days of his term in December 2020.  This investigation was conducted solely by personnel from within the Office and at no time did Mr. Payne request an investigation free from any potential or actual conflict of interest by an outside law enforcement agency as is normal practice under such circumstances. Absolutely no investigatory functions were carried out by agents outside of the district attorney's office.

31. All facts underlying the improper prosecution of Robert Willett were borne from investigations directed by or actually conducted personally by Alonzo Payne and his employees.

32. Alonzo Payne informed Sam Coffman, an investigator for the District Attorney's office, and formerly a deputy sheriff and a currently Colorado licensed peace officer that the District Attorney salary is a fixed amount, per statute. § 20-1-301(d) Colo. Rev. Stat. That salary is and was $130,000.00 per year.

33. Alonzo Payne gave Sam Coffman a payroll sheet, purportedly generated by Tammy Rogers, the business and finance officer for the Office, demonstrating compensation in an amount more than $130,000, consequence to a Christmas bonus. However, other records not referenced by Mr. Payne's investigation, (and not initially provided in discovery in the criminal case) including Mr. Willett's Office IRS tax records and Social Security earnings records, inter alia, demonstrated that Mr. Willett was actually paid with the bonus included, approximately $126,000. Nearly $4000 under the statutory maximum.

34. At no time during or prior to the filing of charges was Mr. Willett ever contacted as part of the investigation to give his version of the events, or to allay concerns of improper behavior,

and to dispute any allegation of criminal wrongdoing as is a basic police investigative practice.

35. Additionally, Tammy Rogers advised Mr. Willett in December 2020 during the closing days of his tenure in office, that the county commissioners had set aside, without any conditions, funds for Mr. Willett (or any District Attorney) to disburse to employes as Christmas bonuses, thereby tacitly granting Mr. Willett authority to do so. At no time prior to the filing of charges did Tammy Rogers ever give a written account clarifying the underlying basis of the investigation, as would be basic police investigative practice, even though she was (and still is) employed in that position with the Office.

36. At no time were the sitting county commissioners of Alamosa County or their subordinates ever interviewed as part of the investigation and charging of Mr. Willett as would be basic police investigative procedure. Nor did the commissioners ever speak in any public manner regarding the allegations.

37. Investigator Sam Coffman, in his role as a criminal investigator, did speak to former Assistant District Ashley McCuaig regarding the practice of bonus administration.

38. McCuaig informed Coffman that the District Attorney's office maintained a surplus of money obtained from processing fees for fraudulent check cases, and that those surplus funds were used to distribute bonuses, as had been done by numerous prior elected DA's.  McCuaig informed Coffman that it was the practice of the office to use those surplus funds to award bonuses.

39. McCuaig informed Coffman that it was his legal opinion that the bonus funds did not constitute an "increase in salary" for purposes calculating minimum compensation per statute.

40. Sam Coffman's sparse one page report, describing his investigation did not even give rise to the legal standard of probable cause, but was ultimately used to justify a false charge against Robert Willett for Embezzlement of Public Property, C.R.S § 18-8-407(1).

41. Alonzo Payne and other members of his office knew that former elected officials interpreted the law the same way and had paid bonuses in a manner consistent with the practice adopted by Robert Willett.

42. More specifically, Tammy Rogers, the business/finance officer (and a 20-year employee of the Office) and contemporaneously in the same position in Payne's office, knew that former elected DA Christa Newmyer-Olsen engaged in the same bonusing practices. After leaving the District Attorney's Office, Christa Newmyer-Olsen became and remains a highly reputable and earnest District Court Judge within the 12th Judicial District.

43. A then employed deputy district attorney (Employee 1) told another then employed deputy district attorney (Employee 2) that the former Christmas bonus practices were being kept in Alonzo's 'back pocket,' alluding to their use as political leverage and potential to target Mr. Willett as a political rival.

44. During Robert Willett's prosecution, Alonzo Payne personally made court appearances as the prosecuting attorney. Alonzo Payne was ordered by the Court to file a Motion to Appoint a Special Prosecutor. Alonzo Payne failed to timely file a Motion to Appoint Special Prosecutor, thus dragging out the proceedings to further impugn Mr. Willett.

45. After Motion by Robert Willett's criminal defense counsel, Alonzo Payne was ordered to identify a special prosecutor for the case.

46. Alonzo Payne did not seek a special prosecutor until compelled by the Court, evidencing a clear intent to prolong the meritless case for the purpose of discrediting Mr. Willett in public and damaging any potential candidacy by him for the office of DA.

47. After missing the Court's deadline to identify a special prosecutor, Alonzo Payne identified District Attorney Henry Solano from the 3rd Judicial District as the special prosecutor.

48. Henry Solano employed a prosecutor then in his office who was formerly in Mr. Payne's office at the time of his appointment as a special prosecutor (Employee 1) thus presenting another potential conflict of interest in the criminal case.

49. This prosecutor (Employee 1) had personal knowledge of Alonzo Payne's political agenda related to the prosecution of Robert Willett over Christmas bonuses.

50. DA Henry Solano carried on the prosecution until Robert Willett's defense counsel filed a second motion for appointment of another special prosecutor.

51. On the eve of hearing motions re prosecutorial appointment, DA Henry Solano agreed to withdraw himself and his office from the prosecution of Robert Willett and agreed to the appointment of a third prosecutor.

52. The 5th Judicial District was appointed to the case thereafter and dismissed Robert Willett's case in its entirety with prejudice, on September 1, 2022.

53. 5th Judicial Deputy District Attorney Stephen Potts, upon review of the case, dismissed the case in the best interest of justice.

54. Mr. Stephen Potts acknowledged the previous pattern regarding Christmas bonuses and did not believe criminal intent existed.

55. The Chief District Court Judge of the 12th Judicial District stated that the dismissal "makes a great deal of sense in the particular circumstance of this case."

56. The Chief District Court Judge dismissed the case against Robert Willett with prejudice based on the "underlined factual scenario and lack of prosecutorial merit."

57. [A] prosecutor is entitled to absolute immunity for those actions that cast [her] in the role of an advocate initiating and presenting the government's case. Absolute immunity, however, does not extend to those actions that are investigative or administrative in nature, including the provision of legal advice outside the setting of a prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 98447 L.Ed.2d 128.

58. [D]efendants, as the officials seeking absolute immunity, "bear the burden of showing it is justified for the function in question." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993). "To earn the protections of absolute immunity *at the motion-to-dismiss stage,* a defendant must show that the conduct triggering absolute immunity clearly appear[s] on the face of the complaint." *Weimer v. Cty. of Fayette, Pennsylvania,* 972 F.3d 177, 187 (3d Cir. 2020) (emphasis added) (internal quotations omitted). Every prosecutorial immunity analysis begins with "'[t]he presumption ... that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties' and the observation that the Supreme Court has been 'quite sparing' in its recognition of absolute immunity." *Carter v. City of Philadelphia,* 181 F.3d 339, 355 (3d Cir. 1999) (citing *Burns v. Reed,* 500 U.S. 478, 486-87 (1991)). The United States Supreme Court has outlined a "functional" approach to immunity issues, which looks to the "nature of the function performed, not the identity of the actor who performed it." *Buckley,* 509 U.S. at 269. The Supreme Court has made clear that prosecutors are only entitled to absolute immunity from liability for § 1983 claims when "initiating and pursuing a criminal prosecution." *Imbler v. Pachtman,* 424 U.S. 409, 422 (1976); *Burns,* 500 U.S. at 491-92. Thus, absolute immunity "attache[s] only to actions performed in a quasi-judicial role, such as participation in court proceedings and other conduct intimately associated with the judicial phases of litigation." *Carter,* 181 F.3d at 356 (internal quotations omitted). Further, absolute prosecutorial immunity does not apply when prosecutors act as administrators or investigative officers. *Id.* (*citing Imbler,* 424 U.S. at 430-31).

59. Relevant factors to consider in determining whether conduct is advocatory or investigatory include: "(1) whether the challenged conduct occurred prior to or subsequent to the filing of formal criminal charges against the person seeking redress; (2) whether there existed safeguards that could deter or mitigate prosecutorial abuse and thus reduce the need for a civil action to redress the violation of constitutional rights; and (3) whether the conduct more closely resembled traditional police conduct than prosecutorial conduct." *Higgs v. District Court*, 713 P.2d 840, 853 (Colo. 1985).

60. The factors considered when determining whether officials are entitled to absolute or qualified immunity are: (1) the nature and importance of the official function to government administration; (2) the likelihood that the official will frequently be accused of wrongful motives in performing this function, and how easily the officer can defend against those accusations; and (3) the availability of other relief to an injured party. *Weed v. Bachner Co. Inc*., 230 P.3d 697 (Alaska 2010). The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties (see *Stein v. Disciplinary Bd. Of Supreme Court of NM*, 520 F.3d 1183 (10th Cir. 2008)), and thus, absolute immunity is not available simply because one's work is functionally part and parcel of the judicial process. The strong medicine of absolute immunity is justified only when the mere possibility of liability poses a very great danger to officials performing their duties effectively.

61. To demonstrate the favorable termination of a criminal prosecution for purposes of a Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction and is not required to demonstrate that the prosecution ended with some affirmative indication of his innocence, such as an acquittal or a dismissal accompanied by a statement from the judge that the evidence was insufficient. *Thompson v. Clark*, 142 S. Ct. 1332 (2022).

62. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). As a result, qualified immunity is denied when a plaintiff's pleadings (interpreted in accordance with *Twombly* standards) meet a two-part test, showing: "(1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established at the time of the defendant's conduct" *Ullery v. Bradley,* 949 F.3d 1282, 1289 (10th Cir. 2020).

63. The Defendants cannot be shielded by qualified immunity because their conduct was not objectively reasonable and violated clearly established statutory or constitutional rights of the Plaintiff, which a reasonable person would have known, and which were clearly established at the time of the violation.

## DISCIPLINARY ACTIONS AGAINST ALONZO PAYNE

64. The City of Alamosa based upon continuous complaints from crime victims, the public, law enforcement agencies, and the media outcry, identified concerns over the behavior of Alonzo Payne and his office and took the unprecedented action of actively funding a recall election

of Alonzo Payne, even though the City did not directly fund or oversee the Office of the District Attorney.

65. However, neither Alamosa County nor the Alamosa County Board of County Commissioners, which did provide funding to the Office of the District Attorney and had at least some implicit oversight responsibility on behalf of the citizens, took any affirmative action to investigate or stop the misconduct of Alonzo Payne.

66. Robert Willett had in the meantime declared himself as a recall candidate for the position and was actively campaigning for the Office which would be filled (if Payne were to be recalled) until the November 2022 general election when a partisan candidate would complete the term of office Payne had resigned from.

67. As a note of interest, Alonzo Payne resigned from the position of elected District Attorney on the final day that he could do so without the recall election being triggered under Colorado election law.  Attorney Anne Kelley from outside the district was appointed to the office by Governor Polis until the termination of Mr. Payne's term in January of 2025. Ms. Kelley defeated Mr. Willett who ran against her in the general election.

68. Robert Willett was the only announced and actively campaigning recall candidate during the run up to the recall which had been started by a citizen group with support from the City of Alamosa.

69. On September 21, 2022, Colorado's Presiding Disciplinary Judge approved a stipulation to discipline, and disbarred Alonzo Christopher Payne (attorney registration number 38366). (See also Colorado Supreme Court disciplinary opinion in case 2022PDJ033.)

70. Alonzo Payne's disbarment took effect on October 26, 2022.

71. Alonzo Payne was disbarred, in part, due to a failure to diligently supervise his employees, including R. Alex Raines, Sam Coffman, and others.

72. Alonzo Payne was disbarred, in part, due to an ongoing failure to honor the Colorado Victims' Rights Act.

73. Alonzo Payne was disbarred, in part, due to a significant backlog of serious and violent criminal cases and failures to act for months on requests by area law enforcement on warrants involving serious and violent crimes and domestic violence.

74. Alonzo Payne was disbarred, in part, due to his negative impact on law enforcement and the public's willingness to report crimes, harming law enforcement efforts and the community.

75. Alonzo Payne was disbarred, in part, due to false statements made to and about victims of crime and to the Courts.

76. Alonzo Payne was disbarred, in part, due to a case he dismissed in April 2022 for failure to provide evidence favorable to the defense.

77. Alonzo Payne was disbarred, in part, due to failing to appear for hearings and improper introduction of hearsay statements.

78. Alonzo Payne was disbarred, in part, due to the circumstances of his handling of the prosecution of Robert Willett all while ignoring other serious and violent crime, victim and citizen complaints, an inquiry by the Colorado Attorney General, and organized political opposition to his administration.

79. Colorado's Presiding Disciplinary Judge found *sua sponte* that during the political campaign to recall Payne from office, Payne began an investigation into a political opponent and filed criminal charges against him.

80. The Disciplinary Judge found that Robert Willett was a political rival and critic of Payne.

81. Payne did not seek an outside law enforcement agency or special prosecutor to oversee the investigation or make charging decisions regarding Robert Willett, and instead, stepped into an investigative function outside of the advocacy role and made the unjust and false charging decision himself, despite easily obtainable exculpatory evidence contained in the files of his own office.

82. Ultimately, Payne's actions were an unethical, illegal, and disingenuous ploy acting under color of state law and in conspiracy with others in his office and designed to cause harm to a political opponent and prevented the court from making a formal probable cause determination early in the case. Further, these actions were designed to "make an example" of those who exercised their constitutional 1st Amendment rights to publicly criticize Payne and hold him accountable to the public.

83. Robert Willett has suffered and continues to suffer extensive economic and non-economic damages because of the actions and other failures of the Defendants.

## V. STATEMENT OF CLAIMS FOR RELIEF

### FEDERAL LAW CLAIMS

CLAIM ONE: 42 U.S.C. § 1983 Malicious Prosecution

*Defendant Prosecutors*

84. Mr. Willett hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and relies upon them in setting forth this claim.

85. In the manner described more fully above, all Defendant Prosecutors, and Defendants Payne, Raines,  and Coffman, individually, jointly, and in conspiracy with one another and/or with other unknown officers, agents, and/or other personnel acting under color of law and within the scope of their employment, deprived Robert Willett of his constitutional rights, including his right to be free from malicious prosecution when they: (1) manufactured inculpatory evidence; (2) manipulated witness testimony; (3) omitted exculpatory evidence and lied in the unilaterally directed criminal Complaint and Summons, and (4) falsified charges in order to prosecute Robert Willett without probable cause, resulting in damages set forth herein.

86. The Defendants accused Robert Willett of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against him without any probable cause for doing so, in violation of his rights secured by the Fourth Amendment and the procedural and substantive due process components of the Fourteenth Amendment.

87. In so doing, the Defendants knowingly, maliciously, and/or recklessly caused Mr. Willett to be improperly subjected to judicial proceedings for which there was no probable cause.

88. The proceedings were ultimately terminated in Robert Willett's favor when all charges against him were dismissed on September 1, 2022, by an intervening prosecutor.

89. Defendants subjected Robert Willett to unauthorized, arbitrary, and malicious governmental action that shocks the conscience in that he was deliberately and intentionally framed for a crime of which he was factually innocent, through the Defendants' fabrication, suppression, and withholding of evidence.

90. The acts and omissions of Defendants were objectively unreasonable and undertaken intentionally, maliciously, and with reckless indifference to the rights of others, and in reckless disregard of the truth and Mr. Willett's innocence.

91. Even though each Defendant and their agents had an affirmative duty to intervene to protect Robert Willett and prevent his constitutional rights from infringement by the others, and even though each had the opportunity to intervene and prevent the harm, each Defendant failed to take reasonable steps to intervene in other Defendants' unconstitutional conduct.

92. The misconduct described in this Count was committed not only by Defendants acting in their individual capacities, but also by final policymakers and pursuant to the policy and practice of the 12th Judicial District Attorney, State of Colorado.

93. As a proximate result of Defendants' unlawful conduct, Robert Willett suffered actual physical and emotional injuries and other damages and losses as described herein, entitling him to compensatory and special damages, including loss of past and future income and loss of earning capacity, loss of property, attorney's fees, and punitive damages, and causing him to continue to incur further economic or other special damages, in amounts to be established at trial.

94. Robert Willett is further entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

CLAIM TWO: 42 U.S.C. § 1983 Due Process– Franks Claim

*Defendants who authored the Criminal Complaint and Summons, Defendant Prosecutors and Sam Coffman*

95. Robert Willett hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and relies upon them in setting forth this claim.

96. Defendants who authored the Complaint and Information and investigative report, individually, jointly, and in conspiracy with one another and/or with other unknown officers, agents, and/or other personnel at the acting under color of law and within the scope of their employment, deprived Robert Willett of his constitutional rights under *Franks v. Delaware, 438 U.S. 154(1978)* and the Fourth and Fourteenth Amendments by knowingly and intentionally, or with reckless disregard for the truth, causing false statements to be included in the Complaint and Information and other documents, and causing exculpatory facts to be omitted; and, had they not done, probable cause would have been vitiated or diluted.

97. The misconduct described in this Count was committed not only by Defendants acting in their individual capacities, but also by final policymakers and pursuant to the policy and practice.

98. Even though each Defendant had an affirmative duty to intervene to protect Robert Willett and prevent his constitutional rights from infringement by the others, and even though each had the opportunity to intervene and prevent the harm, each Defendant failed to take reasonable steps to intervene in other Defendants' unconstitutional conduct.

99. As a proximate result of Defendants' unlawful conduct, Robert Willett was charged, booked, and  for over seven months suffered severe actual physical and emotional injuries and other damages and losses as described herein, entitling him to compensatory and special damages, including loss of past and future income and loss of earning capacity, loss of property, attorney's fees, and punitive damages, and causing him to continue to incur further economic or other special damages, in amounts to be established at trial.

100.    Robert Willett is further entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

CLAIM THREE: 42 U.S.C. § 1983– Conspiracy

*Defendants Payne, Raines, and their Agents*

101.    Robert Willett hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and relies upon them in setting forth this claim.

102.    All Defendants, individually, jointly, and in conspiracy with one another and/or with other unknown officers, agents, and/or other personnel, acting under color of state law and within the scope of their employment, conspired among and between themselves and took overt acts in furtherance of a conspiracy to deprive Robert Willett of his due process rights and his right to be free from seizure, incarceration, deprivation of property and restrictions on liberty, to fabricate evidence against him, to manipulate witness testimony, to suppress, conceal and omit exculpatory evidence, to falsify charges, to commit the misconduct described in this Complaint, and to conceal the knowing and reckless misconduct and to protect one another from liability for depriving Robert Willett of his constitutional rights.

103.    In so doing, these Defendants conspired to accomplish an unlawful purpose by unlawful means.

104.    In furtherance of their conspiracy, each Defendants committed overt acts and were otherwise willful participants in joint activity.

105.    The misconduct of the Defendants was objectively unreasonable and was undertaken maliciously and willfully, with reckless indifference to the rights of others and in total disregard of the truth and Mr. Willett's innocence.

106.    This conspiracy spanned from January 2022 up to the moment Mr. Willett's case was transferred to the third prosecutor of his case who intervened and dismissed the case.

107.    Even though each Defendant had an affirmative duty to intervene to protect Robert Willett and prevent his constitutional rights from infringement by the others, and even though each had the opportunity to intervene and prevent the harm, each Defendant failed to take reasonable steps to intervene in other Defendants' unconstitutional conduct or to prevent the conspiracy and/or its overt acts.

108.    The misconduct described in this Count was committed not only by Defendants acting in their individual capacities, but also by final policymakers and pursuant to the policy and practice of the 12th Judicial District Attorney, State of Colorado as set forth in more detail below (Monell Claim).

109.    As a proximate result of Defendants' unlawful conduct, Robert Willett was charged and lived under summons conditions for the entirety of his wrongful prosecution, and suffered actual physical and emotional injuries and other damages and losses as described herein, entitling him to compensatory and special damages, including loss of past and future income and loss of earning capacity, loss of property, attorney's fees, and punitive damages, and causing him to continue to incur further economic or other special damages, in amounts to be established at trial.

110.    Robert Willett is further entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

CLAIM FOUR: 42 U.S.C. § 1983– Failure to Intervene

*All Defendants*

111.    Robert Willett hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and relies upon them in setting forth this claim.

112.    Each of the Defendants, together with other persons presently unknown, had an affirmative duty to intervene to protect Mr. Willett and prevent his constitutional rights from infringement by the others.

113.    Each Defendant violated the affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other persons acting under color of state law. During the constitutional violations described herein, all Defendants, to include licensed attorneys and Colorado peace officers stood by without intervening to prevent the violation of Mr. Willett's constitutional rights, even though each had the knowledge and an opportunity to do so.

114.    Each Defendant's failure to intervene was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the violation of Mr. Willett's constitutional rights.

115.    The misconduct described in this Count was committed not only by Defendants acting in their individual capacities, but also by final policymakers and pursuant to the policy and practice of the 12th Judicial District Attorney, State of Colorado as set forth in more detail below (Monell Claim).

116.    As a proximate result of Defendants' unlawful conduct, Robert Willett was charged and lived under summons conditions for the entirety of his wrongful prosecution, and suffered actual physical and emotional injuries and other damages and losses as described herein, entitling him to compensatory and special damages, including loss of past and future income and loss of earning capacity, loss of property, attorney's fees, and punitive damages, and

causing him to continue to incur further economic or other special damages, in amounts to be established at trial.

117.    Robert Willett is further entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

<u>CLAIM FIVE</u>: 42 U.S.C. § 1983– Reckless Investigation –

*Defendants Payne, Raines, and Coffman*

118.    Robert Willett hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and relies upon them in setting forth this claim.

119.    Although Defendants knew or should have known that Mr. Willett did not commit a crime, they conducted a reckless investigation, coerced misleading statements, concealed exculpatory information from judges and prosecutors, placed false statements in reports and affidavits, disregarded, concealed, and withheld evidence indicating that Mr. Willett was innocent, and knowingly, recklessly and with reckless disregard for Mr. Willett's innocence and constitutional rights committed the acts described in this Complaint.

120.    These fraudulent, outrageous, and egregious acts robbed Robert Willett of fundamental fairness in the investigation, prosecution, and pretrial proceedings to a degree that shocks the conscience, violating Mr. Willett's clearly established constitutional right to substantive due process of law as guaranteed by the Fourteenth Amendment and causing him the injuries and damages set forth in this Complaint, to the magnitude of potential and actual harm that is truly conscience shocking.

121.    Even though each Defendant had an affirmative duty to intervene to protect Mr. Willett and prevent his constitutional rights from infringement by the others, and even though each had the opportunity to intervene and prevent the harm, each Defendant failed to take reasonable steps to intervene in other Defendants' unconstitutional conduct.

122.    The misconduct described in this Count was committed not only by Defendants acting in their individual capacities, but also by final policymakers and pursuant to the policy and practice of the 12th Judicial District Attorney, State of Colorado as set forth in more detail below (Monell Claim).

123.    As a proximate result of Defendants' unlawful conduct, Robert Willett was charged and lived under summons conditions for the entirety of his wrongful prosecution, and suffered actual physical and emotional injuries and other damages and losses as described herein, entitling him to compensatory and special damages, including loss of past and future income and loss of earning capacity, loss of property, attorney's fees, and punitive damages, and causing him to continue to incur further economic or other special damages, in amounts to be established at trial

124.    Robert Willett is further entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.


CLAIM SIX: 42 U.S.C. § 1983 – Monell - Final Policymakers, Ratification, Unconstitutional Official Policy, and Failure to Supervise and Train

*Defendant Payne acting in his official capacity.*

125.    Robert Willett hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and relies upon them in setting forth this claim.


A. Failure to Train and Supervise

126.    Defendant Payne acting in his official capacity, had a duty to train and supervise officers, investigators, and other personnel.

127.    These Defendants all intentionally and/or recklessly and with deliberate indifference to the constitutional rights of citizens, failed to ensure through custom, policy, practice, training, and supervision that officers and personnel would conduct constitutionally adequate investigations; ensure that suspects would not be maliciously prosecuted; ensure that charging documents would not contain misleading information and/or omit exculpatory information; disclose to prosecutors and courts material information favorable to criminal defendants; follow the duties imposed by *Franks v. Delaware*; properly handle, process, analyze, and report evidence, not utilize evidence in a false and reckless manner in criminal investigations and prosecutions, intervene to prevent constitutional violations and ensure that their personnel would not conspire to do any of the above.

128.    Defendant Payne acting in his official capacity, and/or other final policymakers had actual or constructive notice of such failures to train, supervise, and provide policy to their employees, and failed to provide training or supervision despite an obvious need that such training and supervision was required, where Defendants knew that it was foreseeable that officers and personnel would predictably confront these situations and as a result of the failure to train and supervise, constitutional violations would result.

B. Policy or Custom

129.    Defendant Payne acting in his official capacity, maintained policies or customs exhibiting deliberate indifference to the constitutional rights of Robert Willett, which caused the violation of his rights as described in this Complaint.

130.    Mr. Willett's injuries were caused by  Defendant Payne acting in his official capacity,  in that final policymakers, officers, agents and other personnel failed to disclose exculpatory evidence to the defense and other prosecutors, misrepresented evidence implicating criminal

defendants in criminal conduct, pursued wrongful prosecutions through malicious and flawed investigations, and otherwise violated due process and the Fourth Amendment in a similar manner to that alleged herein.

131.    The above-described widespread practices, which were so well-settled as to constitute the de facto policy of  Defendant Payne acting in his official capacity, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the risk that these policies, practices, and customs would lead to the violation of citizens' constitutional rights, effectively ratified the conduct, and declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers, agents, and personnel who withheld material evidence, fabricated evidence and witness testimony, conducted reckless investigations, inserted into investigatory reports and pleadings misleading information while omitting exculpatory information, and pursued wrongful prosecutions.

C. Ratification

132.    Defendant Payne and Defendant Raines ratified and authorized the misconduct and reckless investigation that caused violation of Robert Willett's constitutional rights described in this Complaint. Defendant Payne's ratification constituted the official policy of the 12th Judicial District Attorney.

D. Misconduct by Final Policymakers

133.    Robert Willett was deprived of his constitutional rights as described in this Complaint by the acts and omissions of Defendant Payne acting in his official capacity as a final policymaker.

E. Proximate Cause of Damages

134.    As a proximate result of Defendants' unlawful conduct, Robert Willett was charged and lived under summons conditions for the entirety of his wrongful prosecution, and suffered actual physical and emotional injuries and other damages, to include public scorn and losses as described herein, entitling him to compensatory and special damages, including loss of past and future income and loss of earning capacity, loss of property, attorney's fees, and punitive damages, and causing him to continue to incur further economic or other special damages, in amounts to be established at trial

135.    Robert Willett is further entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

## STATE LAW CLAIMS

CLAIM SEVEN: Malicious Prosecution (state law) Colo. Rev. Stat. § 13-21-131 – Violation of Colo. Const. Art. II, Section 7, Section 25 (due process), Section 3(inalienable rights)

*Defendant Prosecutors Payne, Raines, and Defendant Investigator Coffman*

136.    Mr. Willett hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and relies upon them in setting forth this claim.

137.    Pursuant to C.R.S. §13-21-131, any police officer who, "under color of law, subjects... any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution, is liable to the injured party for legal or equitable relief or any other appropriate relief."

138.    At all times relevant to the allegations in this Complaint, Robert Willett had the clearly established constitutional right to be free from malicious prosecution. Any reasonable law enforcement officer, including Defendants in this case, knew or should have known of these rights.

139.    Defendants violated Robert Willett's rights under the Colorado Constitution (Article II, sections 3, 7, and 25) to be free from malicious prosecution without probable cause when they, among other things: (1) manipulated witness testimony; (2) suppressed exculpatory evidence; (3) omitted exculpatory evidence, (4) and falsified criminal charges in order to prosecute Robert Willett without probable cause, resulting in his continued prosecution.

140.    All charges against Robert Willett were dismissed with prejudice on September 1, 2022.

141.    The conduct of Defendants was malicious, shocking, and objectively unreasonable considering the circumstances.

142.    The actions of each of the Defendants were instrumental in Mr. Willett's prosecution.

143.    Defendants engaged in a collective plan or effort to prosecute Robert Willett without probable cause, or alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendants' unlawful seizure and prosecution of Mr. Willett and seizure of his property, despite being in a position and having the opportunity to do so. Each is therefore liable for the damages resulting from the objectively unlawful and unreasonable prosecution of Robert Willett.

144.    Defendants reached an explicit or implicit understanding, engaged in a course of conduct, acted in concert, and/or otherwise conspired among themselves to deprive Robert Willett of his constitutional rights, including the right to be free from prosecution based on false statements or omissions of material statements of fact. Each acted to advance a clear common goal and/or implicitly agreed to conceal material information from important decision-makers regarding Robert Willett's prosecution.

145.    Defendants intentionally subjected or caused Robert Willett to be subjected to the deprivation of individual rights secured by the bill of rights of the Colorado Constitution. In the alternative, they did so recklessly.

146.    The acts or omissions of the Defendants were the proximate cause of injuries sustained by Robert Willett.

147.    A reasonable person in each of the Defendants' positions would know that Robert Willett's state constitutional rights were being violated and that he was being subjected to the violations and damages outlined in this Complaint.

148.    Each of the Defendants had an affirmative duty to intervene to protect Robert Willett and prevent his constitutional rights from infringement by the others. Each Defendant had the opportunity to intervene and prevent the harm but failed to take reasonable steps to intervene in other Defendants' unconstitutional conduct.

149.    The acts or omissions of Defendants deprived Robert Willett of his constitutional and statutory rights and caused him severe damages.

150.    Defendant Alonzo Payne is liable for the acts and omissions of Defendants Raines and Coffman who were acting within the scope and course of their employment.

151.    The Defendants' conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which the Defendants must have realized was done heedlessly and recklessly, without regard to the consequences, or of the rights of others, particularly Mr. Willett.

152.    As a proximate result of Defendants' unlawful conduct, Robert Willett was charged and lived under summons conditions for the entirety of his wrongful prosecution, and suffered actual physical and emotional injuries and other damages and losses as described herein, entitling him to compensatory and special damages, including loss of past and future income and loss of earning capacity, loss of property, attorney's fees, and punitive damages, and causing him to continue to incur further economic or other special damages, in amounts to be established at trial.

153.    Robert Willett is further entitled to attorney's fees and costs pursuant to § 13-21-131(3), C.R.S., as well as prejudgment interest and post judgment interest as provided by law.

CLAIM EIGHT: Fabrication of Evidence Colo. Rev. Stat. § 13-21-131 – Violation of Colo. Const. Art. II, Section 25 (due process), Section 3(inalienable rights)

*Defendant Prosecutors Payne and Raines*

154.    Robert Willett hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and relies upon them in setting forth this claim.

155. Defendants individually and in concert with others, as well as under color of law and within the scope of their employment, acted intentionally or recklessly, with willful indifference to Mr. Willett's constitutional rights, and deprived Mr. Willett of his constitutional right to due process, liberty, and right to defend his liberty by knowingly withholding exculpatory evidence and fabricating or manufacturing inculpatory evidence.

156. Mr. Willett seeks declaratory and injunctive relief against Defendants Payne, Coffman, and Raines. Absent their misconduct, the prosecution of Robert Willett could not and would not have occurred.

157. Defendants who authored the Complaint and Information, knowingly and intentionally, or with reckless disregard for the truth, included false and misleading statements in the charging documents and purposely omitted exculpatory evidence.

158. All charges against Robert Willett were dismissed with prejudice on September 1, 2022.

159. Defendants engaged in a collective plan or effort to prosecute Robert Willett without probable cause, or alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendants' unlawful seizure and prosecution of Robert Willett, despite being in a position and having the opportunity to do so. Each is therefore liable for the damages resulting from the objectively unlawful and unreasonable prosecution of Robert Willett.

160. Defendants reached an explicit or implicit understanding, engaged in a course of conduct, acted in concert, and/or otherwise conspired among themselves to deprive Robert Willett of his constitutional rights as described in this Complaint, including the right to be free from prosecution based on false statements or omissions of material statements of fact. Each acted to advance a clear common goal and/or implicitly agreed to conceal material information from important decision-makers regarding Robert Willett's prosecution.

161. Each of the Defendants had an affirmative duty to intervene to protect Robert Willett and prevent his constitutional rights from infringement by the others. Each Defendant had the opportunity to intervene and prevent the harm but failed to take reasonable steps to intervene in other Defendants' unconstitutional conduct.

162. The acts or omissions of Defendants intentionally deprived Robert Willett of his constitutional and statutory rights and caused him severe damages.

163. Defendants subjected or caused Robert Willett to be subjected to the deprivation of individual rights secured by the bill of rights of the Colorado Constitution.

164. Defendant Alonzo Payne is liable for the acts and omissions of Defendant Prosecutors. These Defendants were acting within the scope and course of their employment.

165.   The Defendants' conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which the Defendants must have realized was dangerous, or that was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly Mr. Willett.

166.   As a proximate result of Defendants' unlawful conduct, Robert Willett was charged and lived under summons conditions for the entirety of his wrongful prosecution, and suffered actual physical and emotional injuries and other damages and losses as described herein, entitling him to compensatory and special damages, including loss of past and future income and loss of earning capacity, loss of property, attorney's fees, and punitive damages, and causing him to continue to incur further economic or other special damages, in amounts to be established at trial.

167.   Mr. Willett is further entitled to attorney's fees and costs pursuant to §13-21-131(3), C.R.S. as well as prejudgment interest and post judgment interest as provided by law.

168.   Mr. Willett seeks declaratory and injunctive relief against Defendant Alamosa County and the 12th Judicial District.

CLAIM NINE: False and Misleading Information in a Criminal Filing and Omission and Concealment of Exculpatory Information (state law) Colo. Rev. Stat. § 13-21-131 – Violation of Colo. Const. Art. II, Section 25 (due process), Section 3(inalienable rights)

*Defendant Prosecutors Payne and Raines*

169.   Mr. Willett hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and relies upon them in setting forth this claim.

170.   Defendants who authored the Complaint and Information and investigative reports, individually and in concert with others, acting under color of law and within the scope of their employment, deprived Mr. Willett of his constitutional rights under Colorado Constitution, Article II, Section 7 to be free from unreasonable seizures and under Sections 3 and 25 to due process of law by knowingly or, with reckless disregard for the truth, causing false statements to be included in the official documentation that, if omitted, would have vitiated or diluted probable cause, and by knowingly or recklessly causing facts to be omitted that, if included, would have vitiated or diluted probable cause.

171.   Defendants' nondisclosure of exculpatory evidence and insertion of false, fabricated, and misleading evidence caused Robert Willett's arrest and prosecution and deprivation of his property.

172.   Each of the Defendants had an affirmative duty to intervene to protect Robert Willett and prevent his constitutional rights from infringement by the others. Each Defendant had the

opportunity to intervene and prevent the harm but failed to take reasonable steps to intervene in other Defendants' unconstitutional conduct.

173.    As a proximate result of Defendants' unlawful and unconstitutional conduct, Robert Willett was prosecuted for months.

174.    All charges against Robert Willett were dismissed with prejudice on September 1,2022.

175.    Defendants engaged in a collective plan or effort to prosecute Robert Willett without probable cause, or alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendants' unlawful seizure and prosecution of Robert Willett and seizure of his property, despite being in a position and having the opportunity to do so. Each is therefore liable for the damages resulting from the objectively unlawful and unreasonable arrest and seizure of Robert Willett.

176.    Defendants reached an explicit or implicit understanding, engaged in a course of conduct, acted in concert, and/or otherwise conspired among themselves to deprive Robert Willett of his constitutional rights, including the right to be free from seizure based on an Arrest Affidavit containing false statements or omissions of material statements of fact. Each acted to advance a clear common goal and/or implicitly agreed to conceal material information from important decision-makers regarding Robert Willett's confinement and prosecution and seizure of his property.

177.    The acts or omissions of Defendants subjected or caused Robert Willett to be subjected to the deprivation of individual rights secured by the bill of rights of the Colorado Constitution. The acts or omissions of the Defendants were the moving force behind, and the proximate cause of substantial injuries sustained by Robert Willett.

178.    Defendant Alonzo Payne is liable for the acts and omissions of her employees and agents, who acted within the scope and course of their employment.

179.    The Defendants' conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which the Defendants must have realized would cause constitutional violations, or it was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly Robert Willett.

180.    As a proximate result of Defendants' unlawful conduct, Robert Willett was charged and lived under summons conditions for the entirety of his wrongful prosecution, and suffered actual physical and emotional injuries and other damages and losses as described herein, entitling him to compensatory and special damages, including loss of past and future income and loss of earning capacity, loss of property, attorney's fees, and punitive damages, and causing him to continue to incur further economic or other special damages, in amounts to be established at trial.

181.    Robert Willett is further entitled to attorney's fees and costs pursuant to § 13-21-131(3), C.R.S. as well as prejudgment interest and post judgment interest as provided by law.

182.    Mr. Willett seeks declaratory and injunctive relief against Defendant Alamosa County and the 12th Judicial District.

CLAIM TEN: Conspiracy (state law) Colo. Rev. Stat. § 13-21-131 – Violation of Colo. Const. Art. II, Section 25 (due process), Section 3(inalienable rights)

*Defendant Prosecutors*

183.    Mr. Willett hereby incorporates all other paragraphs of this Complaint as if fully set forth herein and relies upon them in setting forth this claim.

184.    All Defendants, individually, jointly, and in conspiracy with one another and/or with other unknown officers, agents, and/or other personnel, acting under color of law and within the scope of their employment, conspired among and between themselves and took overt acts in furtherance of a conspiracy to deprive Robert Willett of his due process rights and his right to be free from seizure, incarceration, deprivation of property and restrictions on liberty, to fabricate evidence against him, to manipulate witness testimony, to suppress, conceal and omit exculpatory evidence, to falsify charges, to commit the misconduct described in this Complaint, and to conceal the knowing and reckless misconduct and to protect one another from liability for depriving Robert Willett of his constitutional rights.

185.    In so doing, these Defendants conspired to accomplish an unlawful purpose by unlawful means.

186.    In furtherance of their conspiracy, each Defendant committed overt acts and were otherwise willful participants in joint activity.

187.    The misconduct of the Defendants was objectively unreasonable and was undertaken maliciously and willfully, with reckless indifference to the rights of others and in reckless disregard of the truth and Robert Willett's innocence, and constitutional rights.

188.    This conspiracy spanned from approximately January 2021 until the date the case was dismissed.

189.    Even though each Defendant had an affirmative duty to intervene to protect Robert Willett and prevent his constitutional rights from infringement by the others, and even though each had the opportunity to intervene and prevent the harm, each Defendant failed to take reasonable steps to intervene in other Defendants' unconstitutional conduct or to prevent the conspiracy and/or its overt acts.

190.    Defendants' misconduct was malicious, willful, and committed with reckless indifference to the rights of others.

191.    Each Defendant acted to advance a clear common goal and/or implicitly agreed to conceal material information from important decision-makers regarding Robert Willett's prosecution and seizure of his property.

192.    A reasonable person in each of the Defendants' positions would know that Robert Willett's constitutional rights were being violated in a conspiratorial agreement and that he was being subjected to the violations and damages outlined in this Complaint.

193.    Each of the Defendants had an affirmative duty to intervene to protect Robert Willett and prevent his constitutional rights from infringement by the others and to prevent or expose the conspiracy. Each Defendant had the opportunity to intervene and prevent the harm.

194.    Each Defendant failed to take reasonable steps to intervene in other Defendants' unconstitutional conduct.

195.    The acts or omissions of Defendants intentionally deprived Robert Willett of his constitutional and statutory rights and caused him severe damages.

196.    Defendants subjected or caused Robert Willett to be subjected to the deprivation of individual rights secured by the bill of rights of the Colorado Constitution.

197.    Defendant Alonzo Payne is liable for the acts and omissions of Defendant Prosecutors who were acting within the scope and course of their employment.

198.    The Defendants' conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which the Defendants must have realized would cause constitutional violations, or that was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly Mr. Willett.

199.    As a proximate result of Defendants' unlawful conduct, Robert Willett was charged and lived under summons conditions for the entirety of his wrongful prosecution, and suffered actual physical and emotional injuries and other damages and losses as described herein, entitling him to compensatory and special damages, including loss of past and future income and loss of earning capacity, loss of property, attorney's fees, and punitive damages, and causing him to continue to incur further economic or other special damages, in amounts to be established at trial.

200.    Robert Willett is further entitled to attorney's fees and costs pursuant to § 13-21-131(3), C.R.S., as well as prejudgment interest and post judgment interest as provided by law.

<u>NOTICE OF CLAIM</u>

201.   The "Colorado Governmental Immunity Act", article 10 of title 24, does not apply to claims brought pursuant to § 13-21-131, C.R.S. See id., subsection (2)(a).

202.   Nonetheless, Mr. Willett filed a Notice of Claim on all Defendants within 182 days of the events complained of herein. More than 90 days have elapsed since the filing of the Notice of Claim, and adjustment or payment thereof has been neglected or refused.

## VI. <u>REQUEST FOR RELIEF</u>

203.   Robert Willett requests that this Court enter judgment for him and against Defendants and that said judgment grants:

a.   Compensatory and punitive damages, including damages for emotional distress, humiliation, loss of enjoyment of life, loss of future business earnings, and other pain and suffering on all claims allowed by law in the amounts detailed below or such greater amount as may be set by a jury.

b.   Economic losses on all claims allowed by law in the amounts detailed below or such greater amount as may be set by a jury.

c.   Special damages and/or injunctive relief, including but not limited to, requiring that 12th Judicial District Attorney and staff have required training and oversight of the elected District Attorney and other personnel so as to prevent similar decisions being made in the future that results in the violations of individuals' constitutional rights and conspiracies to do so.

d.   Pre- and post-judgment interest at the lawful rate; and

e.   Damages to date are estimated to be Five Million Dollars ($5,000,000) to include all categories listed above.

f.   Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law.

g.   Any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

## VII. <u>DEMAND FOR TRIAL BY JURY</u>

Robert Willett demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues and every claim herein.