IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 23–cv–02010–MDB

ROBERT S. WILLETT, also known as (Bob),

     Plaintiff,

v.

ALONZO (I) PAYNE, in his individual capacity,
ALONZO PAYNE, Former 12th Judicial District Attorney, in his official capacity,
SAM (I) COFFMAN, in his individual capacity
SAM COFFMAN, 12th Judicial District Attorney's Office Investigator, in his official capacity,

     Defendants.[1]

---

**ORDER**

---

This matter is before the Court on Defendant Alonzo Payne's Motion to Dismiss.

(["Motion"], Doc. No. 35.) Plaintiff Robert S. Willett has responded, and Defendant has replied.

---

[1] In his Response, "Plaintiff agrees to dismiss all Defendants from this action except Alonzo Payne." (Doc. No. 42 at 2 (saying Defendants Raines, Coffman, and Rogers "do not object to dismissals without prejudice" and the 12th Judicial District has "no objection to a dismissal with prejudice.").) Plaintiff has since voluntarily dismissed all claims against Defendants Raines, Rogers, and the 12th Judicial District by separate filings. (*See* Doc. Nos. 44; 46.) Additionally, though Plaintiff has not filed a separate notice of dismissal, the Court will grant Plaintiff's request as to Defendant Coffman. *See* Rule 41(a)(1)(A)(i); *Kneen v. Corr. Corp. of Am.*, 2011 WL 1532079, at *2 (D. Colo. Apr. 20, 2011) ("The plaintiff's right to a voluntary dismissal is not extinguished by the filing of a motion to dismiss under Fed.R.Civ.P. 12(b) . . . [t]hus, a notice of dismissal may be filed despite the service of a motion to dismiss[.]" (citation omitted)). Accordingly, the Court orders that all claims against Defendant Coffman are **DISMISSED** without prejudice, and Defendant Coffman's Motion to Dismiss (Doc. No. 17) is denied as **MOOT**.

(["Response"], Doc. No. 42; ["Reply"], Doc. No. 43.) For the reasons discussed below, the

Motion is **GRANTED in part and DENIED in part**.

## BACKGROUND

In this civil lawsuit, Plaintiff contends Defendant Payne is liable under Section 1983 for

malicious prosecution and reckless investigation.[2] (Doc. No. 2 at ¶¶ 85, 118.) Defendant Payne is

sued in his individual capacity.[3]

According to the Complaint, Defendant Payne conspired to violate Plaintiff's

constitutional rights through various forms of misconduct and malicious acts. (*Id.* at ¶ 1.)

Plaintiff "was the former appointed District Attorney and former political opponent of

[Defendant Payne] for office during the 2020 election cycle." (*Id.* at ¶ 18.) Accordingly, Plaintiff

"would be listed as a possible replacement candidate," in the event of Defendant Payne's recall.

(*Id.*) Tensions between the parties escalated when Plaintiff publicly criticized Defendant Payne

and called for his resignation. (*Id.* at ¶ 21.) Shortly thereafter, the City of Alamosa began funding

a recall effort against Defendant Payne. (*Id.*) The day after this funding began, Defendant Payne

allegedly filed a false felony embezzlement charge against Plaintiff. (*Id.*) Plaintiff contends this

---

[2] Plaintiff asserted eight additional claims in his Complaint. (*See generally* Doc. No. 2.)
However, in his Response, Plaintiff agrees to dismiss those additional claims without prejudice,
leaving only the malicious prosecution and reckless investigation claims. (*Id.* at 2.) Therefore,
the Court will not address the portions of the Motion that address the eight additional claims.

[3] Though the Amended Complaint indicates Defendant Payne is sued in his individual and
official capacities, Plaintiff's remaining claims following the voluntary dismissals—Claim One
(Malicious Prosecution) and Claim Five (Reckless Investigation)—appear to be brought against
Defendant Payne only in his individual capacity. (*See* Doc. No. 2 at ¶¶ 84–94.) Thus, the Court
only analyzes individual capacity claims, consistent with Plaintiff's Response—which only
makes individual capacity arguments. (*See generally* Doc. No. 42.)

charge was a politically motivated attack intended to destroy his career, damage his reputation, and suppress dissent against Defendant Payne's administration. (*Id.* at ¶¶ 22–25.)

Before filing the embezzlement charge, Defendant Payne allegedly led a biased and conflict-ridden investigation. (*Id.* at ¶ 30.) The investigation focused on bonuses Plaintiff distributed in December 2020 during his tenure as District Attorney, specifically on whether Plaintiff gave himself a bonus that caused his yearly salary to exceed the $130,000 statutory cap for the position. (*Id.* at ¶¶ 30–33.) Plaintiff asserts Defendant Payne conducted the investigation without involving any external law enforcement agency, ignored evidence that Plaintiff's compensation was within the legal limit, and pursued the charges despite knowing that previous District Attorneys followed similar bonus practices. (*Id.* at ¶¶ 30–34; 41–43.)

The criminal case against Plaintiff was ultimately dismissed with prejudice after it was transferred to a special prosecutor. (*Id.* at ¶¶ 50–55.) The special prosecutor concluded the dismissal was "in the best interest of justice" and "acknowledged the previous pattern regarding Christmas bonuses[,]" noting that he "did not believe criminal intent existed." (*Id.* at ¶¶ 53–55.) Following the dismissal, Defendant Payne was disbarred due to a range of issues, including "the circumstances of his handling of the prosecution of [Plaintiff] all while ignoring other serious and violent crime, victim and citizen complaints, an inquiry by the Colorado Attorney General, and organized political opposition to his administration." (*Id.* at ¶¶ 78.)

In the instant Motion, Defendant Payne seeks dismissal of all claims against him, arguing Plaintiff: (1) failed to serve him in a timely manner; (2) does not state a viable claim for malicious prosecution or reckless investigation; and (3) in any case, Defendant Payne is entitled to either absolute prosecutorial immunity or qualified immunity. (Doc. No. 35 at 4–16.)

**LEGAL STANDARDS**

### I.    Rule 12(b)(5)—Service of Process

Under Rule 12(b)(5), a party may move for dismissal of a case due to insufficient service of process. Fed. R. Civ. P. 12(b)(5). In such motions, the mode or adequacy of delivering a summons and complaint is contested. *Gallan v. Bloom Bus. Jets, LLC*, 480 F. Supp. 3d 1173, 1178 (D. Colo. 2020). Service of process is governed by Fed. R. Civ. P. 4(m), which states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time" unless the plaintiff shows good cause for the delay. Fed. R. Civ. P. 4(m).

When a defendant challenges the sufficiency of service, the burden rests on the plaintiff to establish a *prima facie* case satisfying "statutory and due process requirements so as to permit the court to exercise personal jurisdiction over the defendant." *J.L. v. Best W. Int'l., Inc.*, 521 F. Supp. 3d 1048, 1074 (D. Colo. 2021) (quotation omitted).

A court applying these rules engages in a two-part inquiry. *Est. of Goodwin v. Connell*, 376 F. Supp. 3d 1133, 1144 (D. Colo. 2019). First, the court determines whether the plaintiff has shown good cause for failing to timely serve the defendant. *Id.* If good cause is shown, then an extension of the time for service of process is mandatory. *Id.*; *see also* Fed. R. Civ. P. 4(m). If good cause is not shown, the court proceeds to the second step of the analysis and determines whether a permissive extension is warranted. *Id.* In making this determination, courts may consider affidavits and other documentary evidence, and must resolve all factual disputes in the

plaintiff's favor. *Burnam v. Weld Cnty. Sheriffs*, 2024 WL 1051949, * at 2 (D. Colo. Mar. 11, 2024).

## II.     Rule 12(b)(6)—Failure to State a Claim

Rule 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, a court must accept all well-pleaded facts as true and view these allegations in the light most favorable to the plaintiff. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). However, the "burden [remains] on the plaintiff to frame a 'complaint with enough factual matter to suggest' that [they are] entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). Ultimately, the Court must "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Defendant Payne moves to dismiss pursuant to Rules 12(b)(5) and (6). The Court addresses the service of process argument first, then turns to Defendant Payne's 12(b)(6) challenge.

## I.     Service of Process

Defendant Payne asserts Plaintiff did not properly serve him within the 90-day period required by Rule 4, which ran on November 6, 2023. (Doc. No. 35 at 4; Doc. No. 2.)

Plaintiff responds that he made several service attempts, including hiring a private investigator. Specifically, Plaintiff attempted to serve Defendant Payne on September 28, 2023, and again on October 4, 2023. (*See* Doc. No. 42 at 3.) On both occasions, the process server saw vehicles registered to Defendant Payne but could not confirm Defendant Payne's presence. (*Id.*) Plaintiff then hired a private investigator, who successfully served Defendant Payne on December 12, 2023. (*Id.*) During this attempt, Defendant Payne reportedly refused to accept the documents, leading the process server to leave them at Defendant Payne's front door.

Plaintiff was "meticulous in [his] efforts to comply with the Rule[,]" even though he faced certain challenges. *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir.1994) (quotation omitted). Additionally, Defendant Payne's refusal to accept documents on the date of service suggests Defendant Payne's evasion could have played a role in the delay. *See generally Podlacha v. Dobrovlny*, 2021 WL 1105362, at *2 (D. Colo. Mar. 23, 2021) (in motion to quash service, noting defendant was "attempting to evade service of process"). Moreover, Defendant Payne has not demonstrated any prejudice from a delay of approximately one month, and the Court finds none. *See Knutson v. Walker Group, Inc.*, 343 F. Supp. 2d 971, 974 (D. Colo. 2004) (evaluating prejudice in service delay). Courts generally favor resolving cases on their merits rather than procedural grounds. *Arkansas-Platte & Gulf Partnership v. Dow Chem. Co.*, 886 F. Supp. 762, 765 (D. Colo. 1995). And here, dismissing the case without prejudice may result in a re-filing, which would delay matters. Accordingly, the Court finds Plaintiff has shown good cause for the delay and dismissal is not warranted under Rule 12(b)(5).

II.    **12(b)(6) Challenges**

    A.    **Failure to State a Claim due to Absolute Immunity**

Prosecutors generally enjoy absolute immunity in connection with actions taken to "initiat[e] a prosecution and present[] the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). "Absolute immunity shields those acts undertaken by a government attorney in preparation for judicial proceedings *and* which occur in the course of [their] role as an advocate for the government." *Benavidez v. Howard*, 931 F.3d 1225, 1231 (10th Cir. 2019) (emphasis in original); *see also Mink v. Suthers*, 482 F.3d 1244, 1261 (10th Cir. 2007) (in analyzing absolute immunity "[t]he determinative factor is advocacy because that is the prosecutor's main function") (quotation omitted); *Weise v. Colorado Springs*, 421 F. Supp. 3d 1019, 1038 (D. Colo. 2019) (absolute immunity only applies to individual capacity claims); *Carbajal v. McCann*, 808 F. App'x 620, 631 (10th Cir. 2020) (quotation omitted).

The Supreme Court, however, has recognized a distinction between a prosecutor's role as a government advocate, and their participation in the administrative and investigatory functions, the latter falling outside of their advocacy role, and beyond their preparation for judicial proceedings. *See generally Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). In other words, while "[s]ome functions—like filing charges—are inherently related to a prosecutor's role as an advocate, and therefore protected by absolute immunity," *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018), others are unrelated to the "initiation of a prosecution or for judicial proceedings," and instead are "investigative functions normally performed by a detective or police officer." *Buckley*, 509 U.S. at 273.

In *Buckley*, the prosecutor became involved in the investigation by allegedly securing false evidence related to a boot print left by the killer. *Id.* at 262–63. The investigation was being supervised, at least in part, by the sheriff, which meant police officers and assistant prosecutors

7

were performing essentially the same investigatory functions. *Id.* There, the Court found the

prosecutor was not entitled to absolute immunity. *Id.* It explained:

> the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity 'represents the norm for executive officers, so when a prosecutor functions as an administrator rather than as an officer of the court he is entitled only to qualified immunity. There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.

*Buckley*, 509 U.S. 259, 273–74 (internal citations and quotations omitted); *see also Hartman v.*

*Moore*, 547 U.S. 250, 262 n. 8 (2006) (citing *Buckley*, 509 U.S. at 274–76).

In determining whether certain actions are truly prosecutorial functions that warrant

absolute immunity, courts examine the "nature of the function performed, not the identity of the

actor who performed it." *Id.* (quoting *Buckley*, 509 U.S. at 268.) Here, Plaintiff alleges that

although law enforcement officers typically conduct investigative functions, Defendant Payne

was personally involved in the conflict-riddled investigation. (*See* Doc. No. 2 at ¶¶ 30, 33; *see id.*

at ¶ 30 (saying Defendant Payne erred by failing to "request an investigation free from any

potential or actual conflict of interest by a law enforcement agency as is normal practice under

such circumstances" and instead having "it conducted solely by personnel from within the

Office"); *id.* ("Absolutely no investigatory functions were carried out by agents outside of the

district attorney's office.").) He alleges that "[a]ll facts underlying the improper prosecution"

were "borne from investigations directed by or actually conducted personally by [Plaintiff] and

8

his employees." (*Id.* at ¶ 31.) To this end, Plaintiff alleges Defendant Payne provided Mr. Coffman, "an investigator for the District Attorney's [O]ffice," with "a payroll sheet ... purportedly generated by Tammy Rogers[4]" showing Plaintiff's compensation exceeded the statutory limit due to the Christmas bonus, and that Defendant Payne ignored evidence demonstrating this was not true.[5] (*Id.* at ¶ 32, 33 ("Mr. Willett's Office IRS tax records and Social Security earnings records ... demonstrated that Mr. Willett was actually paid[,] with the bonus included, approximately $126,000.").) Plaintiff further complains of Defendant Payne's failure to interview him, Ms. Rogers, or any Alamosa County Commissioners in connection with the investigation. (*Id.* at ¶ 34–36.) Plaintiff also alleges the embezzlement charge was "justif[ied]" by a "sparse one page report" written by Mr. Coffman that "did not even give rise to the legal standard of probable cause." (*Id.* at ¶ 40.)

Accepting the allegations as true and drawing all reasonable inferences in Plaintiff's favor (as the Court must at this stage), the Complaint demonstrates that the nature of Defendant's conduct falls outside typical prosecutorial functions. Although much of what Plaintiff alleges appears aimed at describing the conflict and the problematic approach to the investigation, the allegations also demonstrate that Defendant himself was conducting investigatory functions. Defendant Payne uncovered alleged evidence, supervised the investigators, and made decisions about the scope and direction of the investigation. And importantly, the allegations reflect that

---

[4] The Amended Complaint describes Ms. Rogers as the 12th Judicial District's "business/finance officer." (Doc. No. 2 at ¶ 42.)

[5] Plaintiff also alleges that Defendant Payne ignored the legal opinion of "Assistant District [Attorney] Ashley McCuaig" that bonuses "did not constitute an 'increase in salary' for purposes of calculating minimum compensation per statute." (*Id.* at ¶ 40.)

Defendant Payne's investigation was conducted before the judicial phase of the criminal process began. (*Compare id.* at ¶ 30 (alleging Defendant Payne initiated the investigation "on or about January 19, 2022"), *with id.* at ¶ 21 (alleging Plaintiff was charged March 3, 2022).) Although it is true that "the duties of the prosecutor in his role as advocate for the State" necessarily "involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom," such as "professional evaluation of the evidence assembled by the police," and "preparation for [the prosecutor's] presentation at trial or before a grand jury, *Buckley*, 509 U.S. 259, 272–73, that is not the case here. In this case, the allegations demonstrate Defendant Payne was driving an investigation that would normally be conducted by an officer, detective, or special team. In other words, it was not the kind of investigation "intimately associated with the judicial phase of the criminal process" *Imbler*, 424 U.S. at 430. And while Defendant Payne maintains his actions "unquestionably relate to the preparation for the initiation of Plaintiff's prosecution"—the Court cannot infer that from Plaintiff's allegations. (*See* Doc. No. 35 at 8.) Perhaps discovery will reveal that Defendant is correct and that his investigative actions were merely "preliminary to the initiation of a prosecution," but at this stage, Defendant falls short of meeting his "burden to show that this alleged conduct is shielded by absolute immunity." *Glaser v. City and Cnty. of Denver*, 557 F. App'x 689, 705 (10th Cir. 2014) (finding that claims based on "allegations of conduct outside of the prosecutorial function, such as the fabrication of evidence for the purpose of establishing probable cause, and defamatory statements and harassment outside of the courtroom setting" were not shielded by absolute immunity)).

    **B.**    **Failure to State a Claim due to Qualified Immunity**

Defendant Payne next argues that, even if he is not entitled to absolute immunity, he is entitled to dismissal under the doctrine of qualified immunity. (*See* Doc. No. 35 at 8–9).

As a threshold matter, the Court notes that Plaintiff maintains two inextricably intertwined claims[6] against Defendant Payne: Claim One for Malicious Prosecution (Doc. No. 2 at ¶¶ 84–94) and Claim Five for a related Reckless Investigation (*id.* at ¶¶ 118–24). Before considering whether Defendant Payne is entitled to qualified immunity, the Court must address whether malicious prosecution and reckless investigation are indeed separate claims, or simply different theories under the well-settled framework of a malicious prosecution claim.

The Tenth Circuit has never formally recognized reckless investigation as a standalone claim. Plaintiff's Response admits this much. (Doc. No. 42 at 11); *see Murphy v. City of Tulsa*, 295 F. Supp. 3d 1221, n. 16 (N.D. Okla. 2018). Nevertheless, Plaintiff relies on *Romero v. Fay*, 45 F.3d 1472 (10th Cir. 1995), to plead them as two separate claims. (*See* Doc. No. 2 at 11–13, 16–17; Doc. No. 42 at 11.)

*Romero* was a § 1983 case brought against the City of Albuquerque and its police after the plaintiff was wrongfully accused of murder. The plaintiff brought several claims including an "unreasonable post-arrest investigation" claim under the Fourteenth Amendment. He alleged the defendants failed to "contact [the plaintiff's] alibi witnesses and interview individuals who witnessed" certain events relevant to the underlying murder in question. *Romero*, 45 F.3d at 1479. The plaintiff also brought a separate and related malicious prosecution claim under the Fifth Amendment. *Id.* In reversing the district court's denial of qualified immunity on both claims, the Tenth Circuit considered the theories separately. However, it did not make any

---

[6] *See supra* n. 2

explicit statements recognizing reckless investigation as a separate claim or a proper cause of action in this Circuit, nor did it comment on the interplay, if any, between malicious prosecution and constitutionally improper investigation.[7] *Id.* at 1478–79, 1481.

In the more recent case of *Parker v. City of Tulsa*, the Tenth Circuit found there was "serious reason to doubt" the viability of a standalone reckless investigation claim in this Circuit, and suggested that such claims fit into the malicious prosecution rubric. 745 F. App'x 79, n. 1 (10th Cir. 2018); *see also Moses-El v. City & Cnty. of Denver*, 376 F. Supp. 3d 1160, n. 4 (D. Colo. 2019) (discussing *Parker*). The *Parker* court noted "the Eighth Circuit stands alone in recognizing the existence of such a cause of action" and further noted, "[t]he Seventh Circuit, on the other hand, has ruled that such claims must be brought as Fourth Amendment false arrest or malicious prosecution claims." *Parker*, 745 F. App'x at n. 1 (citing *Winslow v. Smith*, 696 F.3d 716, 732–35 (8th Cir. 2012); *Brooks v. City of Chi.*, 564 F.3d 830, 833 (7th Cir. 2009)). However, the court ultimately declined to decide the issue because the plaintiff had failed to state a claim under the Eighth Circuit standard, regardless of whether or not it actually applied in this Circuit. *Id.*

Even more recently, in *Moses-El v. City & Cnty. of Denver*, the Tenth Circuit was confronted with a malicious prosecution claim predicated (as to one defendant) on an allegedly

---

[7] The Tenth Circuit had little occasion to discuss any interplay between malicious prosecution and improper investigation in *Romero*. The court found plaintiff's malicious prosecution claim required dismissal with little discussion because plaintiff failed to identify a federal constitutional right underlying the claim. *Romero*, 45 F.3d at 1481 ("Neither Plaintiff's complaint or appellate brief identifies the constitutional due process theory underlying his § 1983 malicious prosecution claim. Instead, Plaintiff alleged in his complaint that Defendants 'prosecuted Plaintiff, in violation of New Mexico law.' ... We therefore hold that Plaintiff failed to allege in the malicious prosecution count of his complaint a violation of a federal constitutional right. ").

improper investigation where the defendant failed to interview an alternative suspect. 2022 WL 1741944 (10th Cir. May 31, 2022). The court analyzed the improper investigation allegations under the malicious prosecution framework. *Id.* at *9. That approach appeared driven—at least in part—by the way plaintiff plead the claims, but it was consistent with *Parker*. *See id.* at *8–10.

Additionally, at least one district court in the Tenth Circuit has overtly analyzed failure-to-investigate allegations as part of a malicious prosecution claim. *See Bledsoe v. Board of County Commissioners*, 501 F. Supp.3d 1059, 1131 (D. Kan. 2020) (finding that an allegation that defendants "intentionally refrained from collecting evidence ... in a manner which could have exculpated [the] plaintiff" supported the plaintiff's malicious prosecution claim because the plaintiff "plausibly alleged that plaintiff, if provided with this evidence, could have shown ... that probable cause didn't support the charges against plaintiff"), *aff'd in part, rev'd in part on other grounds and remanded sub nom. Bledsoe v. Carreno*, 53 F.4th 589 (10th Cir. 2022); *Romero v. Bowman*, 2021 WL 4947234, at *11 (D. Colo. June 11, 2021) (discussing *Bledsoe* and "assuming without deciding that failure to properly investigate may constitute malicious prosecution"); *see also McCaffrey v. City of New York*, 2013 WL 494025, at *5 (S.D.N.Y. Feb. 7, 2013) ("[W]hile a 'failure to investigate' is not independently cognizable as a stand-alone claim, the Court will address the allegation to the extent that it is relevant to Plaintiff's malicious prosecution and fair trial claims.").

Thus, while it is less than perfectly clear, the thrust of binding and persuasive case law counsels that reckless investigation allegations do not amount to a separate standalone claim, but are instead more appropriately considered under the umbrella of a malicious prosecution claim.

13

Accordingly, Claim Five is **dismissed**, but the Court will consider the allegations supporting Claim Five in its analysis of Claim One.

With that, the Court turns to analyzing whether Defendant Payne is entitled to qualified immunity.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Officials sued in their individual capacity are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 538 U.S. 48, 62–63 (2018) (internal quotation marks omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (if either inquiry fails, no further analysis is needed and qualified immunity is appropriate). Courts have made clear that qualified immunity "represents the norm" in suits against public officials. *Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805, 814 (10th Cir. 2022) (quotation omitted); *but see Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023) (defendant claiming qualified immunity through a Rule 12(b)(6) motion faces "a more challenging standard of review than would apply on summary judgment.").

To state a malicious prosecution claim under § 1983, a plaintiff must allege: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Carbajal*, 808 F. App'x at 63l; *see McCarty v. Gilchrist*, 646 F.3d 1281, 1286 (10th

14

Cir. 2011) (noting that no distinction exists between elements required for malicious prosecution claims regardless of whether they are brought under the Fourth or Fourteenth Amendment). "A malicious-prosecution claim is not cognizable until all the elements are satisfied." *Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017) (internal quotation marks omitted).

Probable cause exists when the totality of the circumstances would lead a "reasonable officer to believe that the person to be arrested has committed or is about to commit a crime." *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007). When reviewing probable cause, we "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable officer, amount to probable cause." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1220 (10th Cir. 2020) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). The belief must be anchored in a "substantial probability," not just a "bare suspicion." *Id.* (quoting *Patel v. Hall*, 849 F.3d 970, 981 (10th Cir. 2017)). But it "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (citations omitted).

Malice "is any motive other than a desire to bring an offender to justice[.]" *Montgomery Ward & Co. v. Pherson,* 129 Colo. 502, 509 (Colo. 1954). "For a plaintiff to plausibly plead malice as required for a malicious-prosecution claim, the plaintiff must allege that a defendant acted either 'knowingly' or with 'reckless disregard for the truth.'" *Moses-El*, 2022 WL 1741944, at *9 (citing *See Sanchez v. Hartley*, 810 F.3d 750, 755–56 (10th Cir. 2016) (citation omitted); *Young v. City of Idabel*, 721 F. App'x 789, 804 (10th Cir. 2018)). "[M]alice, may be inferred from a lack of probable cause." *Cronick v. City of Colorado Springs*, 2022 WL 124751, at *6 (D. Colo. Jan. 13, 2022) (citing *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir.

15

2014)). "Additionally, '[f]alsifying or omitting evidence "knowingly and intentionally, or with reckless disregard for the truth" is sufficient to establish malice' in the context of malicious prosecution claims." *Sanchez v. Hartley*, 65 F. Supp. 3d 1111, 1124 (D. Colo. 2014) (quoting *Carbajal v. Serra,* 2012 WL 4369873, at *13 (D.Colo. Aug. 29, 2012); *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)), *aff'd in part, appeal dismissed in part*, 810 F.3d 750 (10th Cir. 2016)

Here, Plaintiff's malicious prosecution claim appears to rest on the following allegations::

(1) *Defendant Payne caused Plaintiff's prosecution*:

- o "In an act of retaliation against [Plaintiff], [Defendant Payne], with the help of his Assistant District Attorney Alex Raines and his Chief Investigator Sam Coffman, caused to be filed a Felony Complaint and Information falsely alleging that [Plaintiff] engaged in embezzlement during his time as the appointed District Attorney for the 12th Judicial District." (Doc. No. 2 at ¶ 20.)

- o "On or about January 19, 2022, [Defendant Payne] directed Sam Coffman to investigate [Plaintiff] regarding a Christmas bonus which [Plaintiff] gave to employees and himself, during the final days of his term in December 2020." (*Id.* at ¶ 30.)

- o "All facts underlying the improper prosecution of [Plaintiff] were borne from investigations directed by or actually conducted personally by [Defendant Payne] and his employees." (*Id.* at ¶ 31.)

(2) *The original action terminated in Plaintiff's favor*:

- o "The 5th Judicial District was appointed to [prosecute] the case thereafter and dismissed [Plaintiff's] case in its entirety with prejudice, on September 1, 2022." (*Id.* at ¶ 52.)

- o The Judge dismissed the case "with prejudice based on the 'underlined factual scenario and lack of prosecutorial merit.'" (*Id.* at ¶ 56.)

(3) *No probable cause for original prosecution*:

- o "Sam Coffman's sparse one-page report, describing his investigation, did not even give rise to the legal standard of probable cause, but was ultimately used to justify a false charge against [Plaintiff] for Embezzlement[.]" (*Id.* at ¶ 20.)

16

- o Defendant Payne provided the investigator with " a payroll sheet" showing compensation exceeding the statutory limit, but did not reference other records including "IRS tax records and Social Security earnings" that "demonstrated [Plaintiff] was actually paid with the bonus included . . . [n]early $4000 under the statutory maximum." (*Id.* at ¶ 33.)

- o Defendant Payne "falsely charged [Plaintiff] with a felony despite [Plaintiff] being factually innocent, while being a potential political rival, and for exercising his 1st Amendment rights to criticize a public figure and political office holder in the jurisdiction and, as an act of sheer retaliation" and abuse of power. (*Id.* at ¶ 25.)

- o "At no time during or prior to the filing of charges was [Plaintiff] ever contacted as part of the investigation to give his version of the events . . . as is a basic police investigative practice." (*Id.* at ¶ 34.)

(4) *Defendant Payne acted with malice:*

- o "[Defendant] filed the Complaint on March 3, 2022, one day after the City of Alamosa publicly started the process of funding a recall, and mere weeks after [Plaintiff] wrote a public letter . . . calling for the resignation of [Defendant Payne]" (Doc. No. 2 at ¶ 21.)

- o "The reckless and unwarranted investigation . . . charging [Plaintiff] was a clear effort by [Defendant Payne], Alex Raines, and Sam Coffman conspiring to destroy and intimidate a political opponent and any other voices then critical of [Defendant Payne's] tenure and manner of running the Office." (*Id.* at ¶ 26.)

- o Defendant Payne "had a reputation among his prosecutors and others in the community for vindictiveness and opening investigations into people that had done things to upset him and also using his privileged position in society as a licensed Colorado attorney in a way to intimidate his critics and rivals." (*Id.* at ¶ 27.)

- o Defendant Payne "did not seek an outside law enforcement agency or special prosecutor to oversee the investigation or make charging decisions regarding [Plaintiff], and instead, stepped into an investigative function outside of the advocacy role and made the unjust and false charging decision himself, despite easily obtainable exculpatory evidence contained in the files of his own office." (*Id.* at ¶ 81.)

(5) *Damages*:

    o   "The charge resulted in [Plaintiff] being suspended without pay from his employment as a prosecutor in the 4th Judicial District, public and professional embarrassment, and having to hire a criminal defense law firm to defend him from the meritless and malicious prosecution." (*Id.* at ¶ 23.)

Though not extraordinarily detailed, Plaintiff's allegations—when considered in the most favorable light, as the Court must at this stage—are sufficient to state a malicious prosecution claim. *See Casanova*, 595 F.3d at 1124. The Complaint describes how Defendant Payne personally directed the investigation, ignored exculpatory evidence, and filed charges without probable cause for a criminal case that was ultimately dismissed. (*See id.* at ¶¶ 20–82.) According to the allegations, Defendant Payne was not merely a passive supervisor but actively engaged in Plaintiff's prosecution, including the embezzlement investigation. (*Id.* at ¶ 81.) Plaintiff alleges that Defendant Payne chose not to involve an outside law enforcement agency or special prosecutor, and instead, stepped into an investigative function outside of the advocacy role and made the charging decision himself, despite exculpatory evidence available to him. (*Id.* at ¶ 81.) According to the Complaint, these actions caused Plaintiff continuing emotional and financial harm. Thus, contrary to Defendant Payne's assertions, (Doc. No. 35 at 14), the allegations are neither insufficiently vague nor conclusory. They adequately state a plausible claim for relief and in so doing, they are enough to satisfy Plaintiff's burden on the first prong of qualified immunity.

Accordingly, the Court turns to the second prong of the qualified immunity analysis— whether Defendant Payne's conduct violated clearly established law. The right to be free from malicious prosecution in the manner alleged here, is generally recognized. *See Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004) ("[A]s alleged, [the defendant] engaged in a deliberate attempt to ensure the prosecution and conviction of an innocent man. Such conduct, if it can be

proven at trial, violated [the plaintiff's] constitutional rights with obvious clarity." (quotations omitted)). Indeed, the matter is so well-settled that it requires little-to-no analysis. *Chavez-Torres v. City of Greeley*, 2015 WL 1850648, at *7 (D. Colo. Apr. 21, 2015) ("Because several Tenth Circuit cases have made clear that an instance of malicious prosecution undertaken without probable cause constitutes a constitutional violation, the Court concludes that the right to be free from malicious prosecution is clearly established under Tenth Circuit law."). Thus, the Court concludes this prong is also satisfied and at this stage, Defendant Payne is not entitled to qualified immunity.

### CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Coffman's Motion to Dismiss (Doc. No. 17), is denied as **MOOT** and all claims against him are **DISMISSED** without prejudice. It is further

**ORDERED** that Defendant Payne's Motion to Dismiss, (Doc. No. 35), is **GRANTED in part and DENIED in part**. Plaintiff's claim Reckless Investigation is dismissed with prejudice. Plaintiff's claim for Malicious Prosecution will proceed to discovery. All other claims against Defendant Payne are dismissed without prejudice. It is further

**ORDERED** that the stay imposed by the Cout at ECF 21, is **LIFTED**. The parties are directed to file a proposed scheduling order on or before **October 25, 2024**.

Dated this 26th day of September, 2024.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge

19